JON M. SANDS
Federal Public Defender
JAY V. SAGAR
Assistant Federal Public Defender
State Bar No. 024111
jay_sagar@fd.org
407 W. Congress, Suite 501
Tucson, AZ  85701-1355
Telephone: (520)879-7500, Fax: (520)879-7600
Attorneys for Defendant Soto-Estrella

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>       vs.<br><br>Jorge Eleazar Soto-Estrella,<br><br>              Defendant. | No. CR14-1995-TUC-RM(CRP)<br><br>MOTION IN LIMINE RE DEFENDANT'S INTENT TO INTRODUCE EVIDENCE OF DURESS AT TRIAL<br>(Hearing Requested) |

The Defendant, Jorge Eleazar Soto-Estrella, by and through counsel, hereby submits this Motion in Limine setting forth the legal foundation for Mr. Soto-Estrella's presentation of the defense of duress at trial.  A hearing is requested during the week of November 30, 2015 or the week of December 14, 2015 (preferable).

SUBMITTED:   October 20, 2015.

JON M. SANDS
Federal Public Defender

/s/Jay V. Sagar
JAY V. SAGAR
Assistant Federal Public Defender

*Certificate of Service below.*

1

## I.    <u>Factual and Procedural Background</u>

Jorge Soto-Estrella was arrested on November 4, 2014 and subsequently charged with Possession with Intent to Distribute Methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and Importation of Methamphetamine under 21 U.S.C. § 952(a) and 21 U.S.C. §§ 960(a)(1) and (b)(3).  Trial in this matter is presently set for November 24, 2015.  Mr. Soto-Estrella submits the present Motion in Limine with the intention of addressing the issues set forth herein at a pre-trial hearing, to allow sufficient time for the Court to rule prior to trial and for the Parties to prepare accordingly.  The Parties have consulted, and based on their schedules and the availability of defense expert witness Dr. Peter Chalk, whose testimony will be provided at the pre-trial hearing, a hearing date during the weeks November 30, 2015 or December 14, 2015 (preferable) is requested.

## II.    <u>Law Regarding Prima Facie Showing of Duress</u>

In order to present a duress defense at trial or to receive a jury instruction on duress, the defendant must make a prima facie showing of duress in a pre-trial offer of proof, *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008), or in evidence presented at trial, *United States v. Jennell*, 749 F.2d 1302, 1305 (9th Cir. 1984).

"It is well-settled that a criminal defendant is entitled to a jury instruction on any defense which provides a legal defense to the charge against him and which has *some* foundation in the evidence, *even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility*."  *United States v. Sotelo-Murillo*, 887 F.2d 176, 178 (9th Cir. 1989) (emphasis added); *see also United States v. Johnson*, 459 F.3d 990,

993 (9th Cir. 2006).  When a court considers duress as a matter of law, it must accept the defendant's proffer as true in its entirety.  *United States v. Kuok*, 671 F.3d 931, 947 (9th Cir. 2012) (reversing the trial court's preclusion of a duress defense).

If evidence of a defense is insufficient as a matter of law, the district court may exclude the evidence during trial.  *United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996).  However, "[f]actfinding is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law."  *United States v. Contento-Pachon*, 723 F.2d 691, 396 (9th Cir. 1984) (reversing the trial court's preclusion of a duress defense).

Failure to give an instruction on the defendant's theory of the case implicates fundamental constitutional guarantees and is *per se* reversible error.  *Sotelo-Murillo*, 887 F.2d at 180.  Additionally, failure to allow the defendant to present evidence of his theory of the case violates the Fifth Amendment right to a fair trial and the Sixth Amendment right to present a meaningful defense.  *See Thomas v. Hubbard*, 273 F.3d 1164, 1178 (9th Cir. 2001); *see also DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001).

The elements of the affirmative defense of duress are: 1) a present, immediate or impending threat of death or serious bodily injury to the defendant if he did not commit the crime; 2) a well-founded fear that the threat would be carried out; and 3) no reasonable opportunity to escape the threatened harm.  *See* Ninth Circuit Model Criminal Jury Instructions 6.5 (2014).  A defendant need only raise an inference that each element has been met.  *See Moreno*, 102 F.3d at 997.

### III.    Mr. Soto-Estrella's Proffer of Duress

At the time of his arrest, Mr. Soto-Estrella was a student at the Instituto Tecnológico de Nogales majoring in electromechanical engineering. While completing the practicum aspect of his degree, he was working at a maquiladora in Nogales, Sonora. A co-worker at the maquiladora befriended Mr. Soto-Estrella, and they shared casual conversation. Eventually, the co-worker asked Mr. Soto-Estrella whether he would be interested in working for him. When Mr. Soto-Estrella learned that the "work" would involve taking contraband across the border, he declined. The co-worker made several more requests, and Mr. Soto-Estrella made clear each time that he was not interested.

The co-worker next told Mr. Soto-Estrella that he needed to meet with his boss, who was the co-worker's superior within the drug trafficking organization. As Mr. Soto-Estrella knew that the co-worker was involved in narco-trafficking, he believed that he did not have a choice in meeting with the boss. Given the level of corruption in Mexico, Mr. Soto-Estrella did not believe he could simply report this to the police, as they would either do nothing or would alert the traffickers.

At the meeting with the co-worker and the co-worker's boss, the boss wanted Mr. Soto-Estrella to affirm that he would be transporting drugs across the border. Mr. Soto-Estrella told them he did not want to, but the boss simply proceeded as if he had agreed instead of declined. The boss obtained Mr. Soto-Estrella's phone number and made clear he would be monitoring him.

The boss later called Mr. Soto-Estrella and told him to meet him in a plaza. At the plaza, the boss asked only if Mr. Soto-Estrella was doing alright, implying within the

context of the overall situation that he would not be alright if he did not stay in contact and go forward with the organization's wishes.  The obvious purpose of this meeting was to put Mr. Soto-Estrella on notice that harm would come to him and those close to him should he fail to follow further instruction.

After this meeting, the organization's members backed up this threat by having the co-worker and the boss tell Mr. Soto-Estrella that they had details about Mr. Soto-Estrella's personal life, such as where he was at other times of the day, personal items he owned, and the fact that the identity of his girlfriend was known to the organization.

The defense intends to present testimony via a witness who is a neighbor of Mr. Soto-Estrella's mother, which will confirm the surveillance operations conducted by the cartel members.  This testimony will include that an individual was seen on several occasions in close proximity to Mr. Soto-Estrella's mother's house, and that he appeared to be monitoring the area and taking pictures.  Additionally, other witnesses are prepared to testify that, shortly after Mr. Soto-Estrella's arrest, individuals were seen outside of his girlfriend's residence appearing to conduct surveillance of the property and those inside.  Mr. Soto-Estrella, his family members, and others close to him were thus clearly being monitored by the drug trafficking organization.

In the period leading up to his arrest, Mr. Soto-Estrella was instructed to drive his car into the U.S. and go through a checkpoint before returning to Mexico.  He complied with this order and continued to fear for his girlfriend and other family members due to the drug trafficking organization's knowledge of their activities.  The members of the

organization continued to make clear to Mr. Soto-Estrella that they knew details regarding his girlfriend and family.

On the day of Mr. Soto-Estrella's arrest, November 4, 2014, the boss took possession of Mr. Soto-Estrella's vehicle and informed him they knew about his girlfriend's whereabouts at that time.  Mr. Soto-Estrella feared physical harm or death would result to him or to his girlfriend or family members and so drove the car loaded with drugs to the border.  An individual from the organization was within view when he approached the Port of Entry and Mr. Soto-Estrella's activities therefore continued to be monitored.  Following inspection of Mr. Soto-Estrella's vehicle, approximately 10 Kilograms of methamphetamine were seized.

## IV.  **Application of Law of Duress to Mr. Soto-Estrella's Proffer**

### a. *Immediacy*

The immediacy prong of the duress defense "requires that there be *some* evidence that the threat of injury was present, immediate, or impending." *Contento-Pachon*, 723 F.2d at 694 (emphasis added).  The "threat does not need to be explicit and verbal and may be implied." *United States v. Navarro*, 608 F.3d 529, 533 (9th Cir. 2010).  Context is everything. *See id.* at 533-35.

In *Contento-Pachon*, the Court determined that because the person making the threats knew the location of the defendant's residence and information about his family members, the defendant had reason to believe the threats would be carried out.  723 F.2d at 694.  The consequences of failing to cooperate with the trafficking organization would be "immediate and harsh." *Id.*  Additionally, the defendant in *Contento-Pachon* contended that he was being watched while he carried out the drug transport, which

demonstrates that the threats "continued to restrain him." *Id.* Within the immediacy analysis, monitoring behavior by those making the threats is highly significant because it demonstrates that they have the information and capability to carry out the threats. *See Kuok*, 671 F.3d at 947 (duress defense permitted where defendant was informed his wife's daily activities were being monitored and pictures were taken of his family members).

In the present case, just like the defendants in *Contento-Pachon* and *Kuok*, Mr. Soto-Estrella was threatened by individuals who knew of the residence where his family lived, and were conducting surveillance on him and those close to him. He had every reason to believe that by failing to cooperate the consequences would be "immediate and harsh," especially given the brutality and operational capability of drug trafficking organizations. Having grown up in Mexico, Mr. Soto-Estrella knew that once the cartel was actively recruiting him and sought his involvement there would be dire consequences if he refused to comply.

Dr. Peter Chalk, a transnational security expert, is prepared to testify regarding the current security situation in Mexico, specifically with regard to the corrupt conditions among the Mexican police and the danger in contacting the police with information related to the cartels. Dr. Chalk would testify that numerous Mexican police officers are often either working directly with cartel members or will allow the cartel to engage in its trafficking activities without intervening. This pervasive culture of corruption among the Mexican authorities is highly relevant as to whether Mr. Soto-Estrella would believe the threat would be acted upon. Furthermore, the threat was

7

much more likely to be carried out immediately because there was be no competent authority to prevent it.

The context for the threats in this case is critical to the analysis. Mr. Soto-Estrella told his co-worker that he was not interested in drug trafficking on several occasions, and the co-worker nonetheless persisted. Mr. Soto-Estrella told the co-worker's boss that he did not want to be involved, and the boss simply acted as though he had agreed to traffic drugs. The boss made Mr. Soto-Estrella meet with him specifically for the purpose of striking fear in him by implying he would not be alright if he failed to follow through with providing assistance. Furthermore, both members of the drug trafficking organization he had met informed Mr. Soto-Estrella at various times that they had personal information about him and his family members and girlfriend, with the clear implication being that they were monitoring his and his family's whereabouts and could thus act swiftly should he fail to comply with their instructions. In fact, based on expected witness testimony, cartel members were even conducting surveillance outside his mother's house and taking pictures.

Additionally, similar to the defendant in *Contento-Pachon*, Mr. Soto-Estrella was being watched by an individual from the organization as he drove toward the Port of Entry. This surveillance activity further served to notify Mr. Soto-Estrella that his activities were being closely monitored, and that there would be consequences for non-compliance. Mr. Soto-Estrella has thus proffered sufficient evidence on the immediacy prong to present a triable issue of fact.

\\\

8

*b. Well-Grounded Fear*

Mr. Soto-Estrella's case involves a "well-grounded fear that the threat would be carried out," Ninth Circuit Model Criminal Jury Instructions 6.5 (2014), because the current extreme level of violence in Mexico due to the activities of drug trafficking organizations supported the belief that the threat was real and would be acted upon. Furthermore, Mr. Soto-Estrella had already told the cartel members several times that he did not want to participate and his wishes were not respected; instead, it was simply assumed that he would have to carry through with the transport, which demonstrated that there was no other choice. Given the overall context of violence and corruption in Mexico, any reasonable person in Mr. Soto-Estrella's position would believe that he would, in fact, be harmed or killed if he did not follow through with the instructions he received.

In Mexico, the homicide rate is extremely high – often tied to cartel-related violence – and virtually all murders go unsolved.[1] This is due, in part, to the breakdown in civil society as a result of the war against criminal trafficking organizations, in which witnesses are fearful of coming forward to assist the prosecution and police officers may not even investigate because of their own fear of reprisal or their connection to the organizations themselves.[2] As noted above, Dr. Chalk is prepared to testify in detail regarding these issues.

---

[1] In 2012, according to Mexico's national statistics institute, **less than 2% of all homicides resulted in a sentence**. http://www.insightcrime.org/news-briefs/98-of-mexico-murder-cases-unsolved (InSight Crime is sponsored by American University's Center for Latin American and Latino Studies)

[2] *In Mexican Drug War, Investigators Are Fearful*, New York Times, October 16, 2009 at http://www.nytimes.com/2009/10/17/world/americas/17juarez.html?pagewanted=all&_r=0 ("**Fear prevents many cases from being solved because investigators hesitate to dig too deeply and witnesses refuse to talk**").

Mr. Soto-Estrella did not believe that by simply contacting Mexican police officers they would investigate the issue and help protect him from harm. Instead, he believed that the police would either fail to help him or were corrupt[3] and would notify the drug trafficking organization that he was attempting to avoid participation and was notifying law enforcement of their activities.

The fear that Mr. Soto-Estrella experienced has further foundation in the ruthlessness and brutality of the criminal organizations operating in Mexico. It has been well-documented that the cartels employ tactics specifically designed to elicit fear, and that threats are acted upon in order to coerce compliance.[4] Additionally, given the lax enforcement of violent crime, and the semi-autonomous nature of the cartels, violence by members of such organizations occurs with near-impunity. Individuals such as Mr. Soto-Estrella, who have the experience of being raised in Mexico, are well aware that drug trafficking organizations are known for carrying out violent acts against others and are rarely brought to justice for their crimes.

Based on the current state of violence in Mexico, the systematic tactics utilized by the criminal organizations there, and the widespread corruption within the police ranks, Mr. Soto-Estrella had a well-grounded fear that he would become the next victim in

---

[3] 13 *Federal Police Among 18 Arrested in Mexico Kidnapping Probe*, Los Angeles Times, October 8, 2013 at http://www.latimes.com/world/la-fg-mexico-kidnappers-20131009,0,1617714.story#axzz2wcwg5uOz ("**Police corruption in Mexico is notoriously widespread, and public confidence in the police is dismally low**").
[4] *Mexico Violence: Fear and Intimidation*, BBC News, May 14, 2012 at http://www.bbc.com/news/world-latin-america-18063328 ("Reprehensible acts," such as beheadings and mutilation of bodies are designed to "sow fear among the civilian population and the authorities," according to Mexico's Interior Minister Alejandro Poire)

Mexico's drug war[5] and that he was unlikely to receive any assistance from the Mexican authorities.

### c. Escapability

Under the final element of the duress defense, the defendant must show that he had no reasonable opportunity to escape. Ninth Circuit Model Criminal Jury Instructions 6.5 (2014). *See also United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975). The issue of whether or not a person in Mr. Soto-Estrella's situation would believe he could successfully seek aid from corrupt police in Mexico is a matter for the jury to decide. *See Contento-Pachon*, 723 F.2d at 694 (trier of fact should decide whether one in defendant's position might believe that local police were paid informants for drug traffickers and that reporting matter to police did not represent reasonable opportunity to escape).

Here, Mr. Soto-Estrella did not believe he would receive help from Mexican authorities due to corruption. Furthermore, he believed the threat would be carried out if he chose to alert the authorities or did not follow through with the drug transport. His vehicle was taken from him and he was told he would need to use this same vehicle for the transport. Importantly, the cartel indicated to Mr. Soto-Estrella that he, his girlfriend, and his family were being monitored, so any attempt to escape the situation would still leave others unprotected and would likely make them victims.

Even assuming that Mr. Soto-Estrella could have left Mexico, he would still fear harm to his family members and girlfriend so this was not a reasonable alternative. The

---

[5] *Mexico's Drug War Fast Facts*, CNN, March 15, 2014 at
http://www.cnn.com/2013/09/02/world/americas/mexico-drug-war-fast-facts/ (According to Human Rights Watch, more than 60,000 people have been killed between 2006 and 2012 due to cartel-related violence)

mere possibility of moving away from the geographical area of threats does not equate to a reasonable opportunity to escape. *See Kuok*, 671 F.3d at 949 ("the possibility of packing up and moving out of the dangerous environment, abandoning one's work and displacing one's entire family, does not necessarily present a reasonable opportunity for escape").

Finally, although Mr. Soto-Estrella did not inform American law enforcement agents that he was under duress at the time of arrest, whether he had a reasonable opportunity to escape is nonetheless a question for the jury to decide. In the present case, cooperating with the authorities at the Port of Entry would not have meant true "escape" because his family members and girlfriend remained in Mexico and would not be protected. *See United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997) ("[t]he government argues that…[the defendant] could have escaped by cooperating with the American authorities. We do not see how protection would have protected his father in Colombia"); *see also Kuok*, 671 at 949-50 ("the government's suggestion that [the defendant] should have cooperated with the authorities immediately upon landing in the Atlanta airport may be unreasonable, given that [the defendant] knew his family was still in danger of being jailed by Chinese government officials beyond the control of U.S. authorities").

As a jury could find that Mr. Soto-Estrella had no other reasonable opportunity to escape than to proceed with the drug transport as instructed, there is a triable issue of fact on the element of escapability.

## V.    Conclusion

Based on the foregoing, Mr. Soto-Estrella respectfully requests that the Court permit him to present the defense of duress at trial and instruct the jury accordingly.

SUBMITTED:  October 20, 2015.

JON M. SANDS
Federal Public Defender
*/s/Jay V. Sagar*
JAY V. SAGAR
Assistant Federal Public Defender

### Certificate of Service

*I hereby certify that on October 20, 2015, I electronically transmitted the attached document (along with a copy of all attachments) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following*

*CM/ECF registrants:*

Christopher Brown
 Assistant United States Attorney